CRONE, Judge,
concurring.
As noted above, “prosecutors and courts are left with the difficult task of determining ‘when parental use of physical force in disciplining children turns an otherwise law-abiding citizen into a criminal.’” Op. at 1045 (quoting Willis, 888 N.E.2d at 180). I write separately to suggest that our supreme court made that task much more difficult by importing the vague reasonableness standard of the Restatement of Torts into the criminal arena.
When does reasonable punishment become unreasonable? The trial court clearly struggled with this question, as have we at the appellate level. Would thirteen strikes with a belt have been reasonable? Or perhaps fifteen strikes with less bruising and pain? What if Carter had inflicted the same punishment with a rolled-up newspaper? What if M.C.’s transgressions had been slightly more egregious, or what if her brother had witnessed her punishment? With the possible exception of sentencing, I cannot think of any other area in criminal law that is so fraught with subjectivity. Everyone agrees that a line needs to be drawn, but current caselaw offers little guidance as to where that.line is.[4]
There may not be any area where reasonable minds differ more in our current society than corporal punishment of children. Attitudes vary dramatically by and within generations and cultures.[5] If the purpose of the criminal law is to put a person on notice of what conduct is proscribed and what is permitted, then how can one’s guilt or innocence depend upon how someone else disciplines his or her children when there is no consensus about what is appropriate?
That being said, courts must step in where legislatures decline to tread, so unless and until the General Assembly enacts clearer guidelines for parental discipline (or our supreme court adopts a more workable standard), trial judges and jurors must rely on their experience and judgment to determine when parents cross over the blurry line that separates lawful from unlawful conduct, and appellate courts must give those determinations significant deference. For that reason, I reluctantly concur in my colleagues’ affir-mance of Carter’s battery conviction.

. The lead opinion cites several reported cases with minor factual differences yet markedly different results.

. Some who use the oft-quoted biblical phrase “spare the rod and spoil the child” to justify corporal punishment may be unaware that "the rod” as used in biblical times referred to a shepherd’s staff, which was primarily used for redirecting and not striking the flock. A refugee from Myanmar recently relied on a similar biblical passage to justify beating her seven-year-old son with a plastic coat hanger, which resulted in thirty-six bruises. Vick Ryckaert, Mom cites religious freedom in beating son, pleads guilty, USA Today, Oct. 29, 2016, http://www.usatoday.com/story/news/ nation-now/2016/10/28/indiana-religious-freedom-act-defense/92906838/. The woman, who was charged with felony battery and neglect, invoked Indiana’s Religious Freedom Restoration Act and “cultural differences” as a defense but ultimately agreed to plead guilty to misdemeanor battery and was sentenced to a year of probation. Id.